```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

DERIC LaVELLE MAY, # 209534,   :

    Plaintiff,                    :

vs.                            :   CIVIL ACTION 15-30-KD-M

BENNIE ANDREWS, *et al.*,      :

    Defendants.                   :


<u>REPORT AND RECOMMENDATION</u>

This § 1983 action, filed by an Alabama prison inmate proceeding *pro se*, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action.  When Plaintiff filed the Complaint, he also filed a Motion to Proceed Without Prepayment of Fees instead of paying the $400 filing fee, which he is required to pay as a "three-striker," unless he meets the exception to 28 U.S.C. § 1915(g).  After reviewing Plaintiff's Complaint, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

I.   <u>Applicable Law</u>.

Section 1915(g) provides:

> In no event shall a prisoner bring
> a civil action or appeal a judgment in
> a civil action or proceeding under this

>section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed. *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002). "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'" *Rivera v. Allin,* 144 F.3d 719, 723 (11th Cir. 1998), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199, 215-16 (2007).

Even though Plaintiff is known to this Court as a "three-striker," the Court reviewed the records of the United States District Court for the Southern, Middle, and Northern Districts of Alabama to verify that he has three or more *in forma pauperis* actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief can be granted. From this review the Court discovered Plaintiff has seven actions and appeals that were dismissed based on one of the foregoing reasons, namely, *May v. Culliver,*

2

CA 10-0121-CG-C (S.D. Ala. Feb. 24, 2012) (failure to state a claim), *appeal dismissed* (11th Cir. Sept. 20, 2012) (frivolous); *May v. Patterson,* CA 12-0703-KD-N (S.D. Ala. Sept. 5, 2013) (malicious), *appeal dismissed* (11th Cir. June 4, 2014) (frivolous); *May v. Barber,* CA 13-0237-CB-C (S.D. Ala. July 22, 2013) (malicious), *appeal dismissed* (11th Cir. July 24, 2014) (frivolous); *May v. Patterson,* App. No. 13-14499-C (11th Cir. June 26, 2014) (frivolous) (corresponding district court case is CA 11-0675-KD-B (S.D. Ala. Sept. 9, 2013) (dismissed on defendants' summary judgment motion)).[1]

In order to avoid the dismissal of the present action pursuant to § 1915(g), Plaintiff must satisfy the exception to § 1915(g), which requires that at the time of the Complaint's filing, he show that he was "under imminent danger of serious physical injury." *See Adbul-Akabar v. McKelvie,* 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress

---

[1] In addition to these actions and appeals, this Court's docket reflects nine other actions filed by Plaintiff in addition to another action filed in the Northern District of Alabama. Based on a review of all Plaintiff's actions, eight of Plaintiff's actions contain claims based on medical issues related to Plaintiff's head, namely, *May v. Culliver,* CA 10-0121-CG-C; *May v. Patterson,* CA 11-0675-KD-B; *May v. Barber,* CA 13-0237-CB-C; *May v. Barber,* CA 13-0429-CB-M; *May v. Hetzel,* CA 14-0155-CG-C; *May v. Thomas,* CA 13-0385-CB-M; *May v. Barber,* CA 14-0479-WS-N; and *May v. Stone,* CA 15-25-KD-B (pending). Furthermore, five of his actions have been dismissed pursuant to 28 U.S.C. § 1915(g), namely, *May v. Barber,* CA 13-0429-CB-M; *May v. Howard,* CA 13-0557-CG-C; *May v. Smith,* CA 14-0171-CG-B; *May v. Myers,* CA 14-0271-KD-B; *May v. Thomas,* CA 13-0385-CB-M; and *May v. Stone,* CA 15-0025-KD-B.

3

indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), *cert. denied,* 533 U.S. 953 (2001); *Brown v. Johnson,* 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); *Medberry v. Butler,* 185 F.3d 1189, 1193 (11th Cir. 1999) (the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

In determining if the exception to § 1915(g) is satisfied, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." *Brown,* 387 F.3d at 1350. To make this showing, a plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]" *Ball v. Allen,* CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (citation and quotation marks omitted) (unpublished) (Granade, C.J.). Plaintiff has not done this.

II. <u>Allegations in Complaint</u>. (Doc. 1).

On January 23, 2015, the Court received Plaintiff's Complaint signed January 15, 2015. (Doc. 1 at 7). In the Complaint, Plaintiff identifies October 20, 2014 as the date of the complained of incident. (*Id.* at 4). He names as

4

Defendants, Bennie Andrews, Health Services Administrator; Walter Myers, Warden; and Ms. McCea, Registered Nurse and Director of Nursing. (*Id.* at 5).

On October 14, 2014, Plaintiff alleges that he saw Dr. Kouns due to frequent and severe headaches. (*Id.* at 4). Plaintiff told Dr. Kouns that he had a "ventriculoperitoneal shunt malfunction[, which] maybe what is causing his headaches." (*Id.*). Dr. Kouns requested that Plaintiff receive a CT scan of his brain. (*Id.*). On October 24, 2014, Plaintiff was taken to Atmore Community Hospital for a CT scan. (*Id.*).

When Plaintiff requested the results, Defendant Andrews told him that the final impression was: "Postsurgical changes within the brain. Ventriculostomy shunt appears to be in good position and no change in ventricle size is noted. No acute findings are seen." (*Id.* at 8). Plaintiff contends that the report does not mention if his "shunt is working as it was designed to work." (*Id.*).

On December 19, 2014, Plaintiff signed up for sick call, requesting that his shunt ("shunt" or "VP shunt") be replaced because "it has collapsed and does not refill." (*Id.*). Defendant McCea "asked [him] was he a doctor." (*Id.*). Plaintiff told "her that a neurosurgeon in his medical reports of July 12, 2010 revealed the shunt has collapsed and does not refill." (*Id.*). Plaintiff argues that Defendant McCea

5

"attempted to make up a clever trick by acknowledging that [his] [two] CT scans revealed his shunt to be working." (*Id.*).

To support his claim, Plaintiff maintains that his CT scan of February, 2014, "does not mention if the [VP shunt] is working as it was designed to work [because] the only thing the report says pertaining to [his] [VP shunt] is, 'there is a VP shunt 'tube' that enters right superior occipital bone and goes into the right lateral ventricle." (*Id.* at 9). Then, the CT scan of October 24, 2014, states that his "[v]entriculostomy appears to be in good position." (*Id.*). Plaintiff asserts that these two CT scans stated that his VP shunt "was working as it was designed to work." (*Id.*).

Plaintiff advised "Ms. McCae that she should look in volumes 1 and 2 of his medical file [because there] were medical issues left unattended to and /or unchecked." (*Id.*). Defendant McCea continued to look in volume 3 of his medical records, then closed the file, and told him good-bye. (*Id.*). Plaintiff alleges Defendant McCea's response was "ineffective" to his request to have his "malfunctioning shunt replaced," and as director of nursing, her actions were "medically inappropriate." (*Id.*).

On December 19, 2104, Plaintiff's grievance was denied by Defendant Andrews, who advised Plaintiff that "this discussion regarding [his] malfunctioning shunt is closed." (*Id.* at 10).

6

Plaintiff contends that Defendant Andrews "made a decision . . . that requires[s] a specialist['s] attention."  (*Id.*).

Furthermore, Plaintiff claims that Defendant Myers failed to ensure that Defendants were adequately trained, and to oversee and discipline them on October 30, 2014 and December 19, 2014.  (*Id.*).

At the end of the allegations makes broad, conclusory statements without providing a connection to a specific Defendant.  In them, Plaintiff states that his VP shunt was implanted in his right ventricle to manage cerebrospinal fluid from his hydrocephalus.  (*Id.* at 10).  The excessive build-up of this fluid has caused him daily discomfort from frequent and severe headaches, equilibrium problems, tiredness, and irritability stemming from Defendants' refusal to provide something to alleviate the pain or their delay in prescribing a pain reliever, which was given only after his family contacted higher officials.  (*Id.*).  "Defendant's obdurate refusal was clearly wanton[n]ess, as of this date ([Plaintiff]) is getting nothing to alleviate his pains from the hydrocephalus."  (*Id.*).  Plaintiff contends that "[t]he total withdrawal of medical care constitutes an imminent damage of serious physical injury."  (*Id.* at 10).  He argues that his shunt, which has collapsed and does not refill, "can further deteriorate to pose an imminent

7

danger of serious physical injury if the shunt is left untreated."  (*Id.*).

For relief, Plaintiff requests compensatory and punitive damages, attorney's fees, and costs taxed to Defendants.  (*Id.* at 7).

III.  <u>Analysis</u>.

Plaintiff's Complaint was filed between January 15, 2015, when he signed the Complaint, and January 23, 2015, when the Court received his Complaint.  (*Id.* at 7).  *See Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (When a prisoner "deliver[s] a pleading to the prison authorities for forwarding to the court clerk," it is deemed filed.); *see Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (extending *Houston* to § 1983 actions filed by *pro se* prisoners).  In this instance, the exact filing date does not need to be determined because the dates that are connected to a named Defendant range from October 30, 2014, to December 19, 2014, not near the time of the Complaint's filing in January, 2015.  (Doc. 1 at 5-6).

October 30th and December 19th are the dates when Defendants Andrews and McCea interacted with Plaintiff.  (*Id.*). These same dates are identified for Defendant Myers' involvement as a prison official who allegedly supervises the medical Defendants. (*Id.* at 5).

8

However, the allegations do not show that any named Defendants was involved in any of Plaintiff's claims at the time the Complaint was filed in January, 2015. In fact, the only allegation that correlates to the time of the Complaint's filing is the allegation that Plaintiff was not receiving anything to alleviate his pain on the date that he signed the Complaint. (Doc. 1 at 10). No Defendant is connected to this allegation, and the allegation does not allege or reflect that on that date there was a great likelihood that he would suffer an imminent serious physical injury. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (finding that a plaintiff must establish a causal connection between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights in order to state a claim upon which relief may be granted in a § 1983 action); *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1950, (2009) (holding that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (citation omitted). Granted, the underlying hydrocephalus and VP shunt's condition have been recognized as a serious medical need. *See May v. Patterson,* CA No. 11-675-KD-B (S.D. Ala.)[2] (recognizing Plaintiff's serious medical need),

---

[2]   In *May v. Patterson,* CA No. 11-675-KD-B, the medical Defendants furnished with their Special Report a copy of

Plaintiff's medical records. (Doc. 32). These records show that on July 12, 2010, Dr. Eugene Quindlen, a neurosurgeon at the University of South Alabama ("USA"), examined Plaintiff for increased headaches and ataxia. (Doc. 32-3 at 19). He noted Plaintiff's history of having a VP shunt placed in his brain in 1990 for hydrocephalus and of having a resection of two AVMs in his brain in 1991 and 1992 by Dr. Wink Fisher at UAB. (*Id.*). Earlier, when Dr. Quindlen saw Plaintiff in 2008, he could find no particular reason for his headaches. (*Id.*). He observed that Plaintiff had a history of a severe stroke, and was taking tegretol for seizures. (*Id.*).

The records show that on July 12, 2010, Plaintiff was having severe headaches, dizzy spells, and fatigue (*id.*); his gait was slightly more stiff than before; and Dr. Quindlen could palpate the shunt, which was noted as being collapsed and not refilling. (*Id.*). His review of the x-rays showed no evidence of edema and no shunt x-rays being performed. (*Id.*). Dr. Quindlen found that Plaintiff was "healthy appearing and in no apparent distress" and did not think that Plaintiff had "severe elevated intracranial pressure [, but instead was] having poor shunt function." (*Id.*). His plan was to obtain shunt films and admit Plaintiff to the hospital for a shunt revision. (*Id.*).

Shortly thereafter, on September 15, 2010, pursuant to the warden's request, the prison doctor extensively reviewed Plaintiff's medical records, noting that Plaintiff has hydrocephalus with a malfunctioning shunt, which had led to headaches and ataxia. (Doc. 32-3 at 5). The warden wanted the doctor to talk to Plaintiff because Plaintiff refused to have surgery performed by the neurosurgeon at USA and wanted to have his original surgeon at UAB, who had given him the shunt, to perform the surgery. (*Id.*). The UAB option was not available. (*Id.*). Plaintiff refused to have the surgery. (*Id.* at 30).

On July 24, 2013, a Report and Recommendation was entered granting Defendants summary judgment and finding no deliberate indifference to Plaintiff's serious medical needs. (Doc. 69). The extensive medical treatment that Plaintiff received was recounted. After the District Court adopted the Report and Recommendation and entered Judgment for Defendants (Doc. 75), Plaintiff appealed.

On June 26, 2014, the Eleventh Circuit Court of Appeals found Plaintiff's appeal to be frivolous. (Doc. 94 at 7). The Eleventh Circuit noted that Plaintiff's taking issue with Dr. Quindlen's recommendation was the root of the instant action and "cannot sustain a claim of deliberate indifference." (*Id.*). The Court opined that Plaintiff had "not identified any evidence to refute or even undermine Dr. Quindlen's medical judgment, or

10

*appeal dismissed as frivolous* (11th Cir. June 26, 2014) (holding that the District Court properly granted summary judgment) (Doc. 94).  But no allegations are present that Plaintiff will suffer any injury that is imminent from these conditions.  Accordingly, the undersigned concludes that Plaintiff's allegations do not demonstrate that he was "under imminent danger of serious physical injury" at the time the Complaint was filed.  *Brown,* 387 F.3d at 1350.

IV.   Conclusion.

Because Plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400.00 filing fee at the time he filed this action, Plaintiff's action is due to be dismissed without prejudice.  *Dupree,* 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. § 1915(g) does not pay the full filing fee at the time he *initiates* the action); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), *cert.*

---

otherwise demonstrate that the Defendant rendered inadequate or delayed medical care.  [Plaintiff] instead has demanded a physician of his own choosing."  (*Id.*)

In a later action, *May v. Barber,* CA No. 14-479-WS-N (S.D. Ala. Feb. 26, 2105), some of Plaintiff's litigation history surrounding medical issues with his head is recounted in the Magistrate Judge's Report and Recommendation recommending the dismissal of Plaintiff's action pursuant to 28 U.S.C. § 1915(g). (Doc. 2).

11

*denied*, 535 U.S. 976 (2002).  Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72.4.  The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings."  *Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 23rd day of March, 2015.

s/ BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE